IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-00393-PAB

STEVEN HADDOCK,

     Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

     Defendant.
_____

**ORDER AFFIRMING DECISION OF THE ADMINISTRATIVE LAW JUDGE**
_____

## I. INTRODUCTION

This matter comes before the Court on plaintiff Steven Haddock's complaint
[Docket No. 3], filed February 26, 2008.  Mr. Haddock seeks review of the final decision
of defendant Michael J. Astrue (the "Commissioner") denying plaintiff's claim for
Disability Insurance benefits and Supplemental Security Income benefits under Titles II
and XVI of the Social Security Act (the "Act").  The Court has jurisdiction to review the
Commissioner's final decision under 42 U.S.C. § 405(g).

## II. BACKGROUND

On July 8, 2005, Mr. Haddock filed applications for disability benefits and
supplemental benefits.  R. at 55-69, 396-99.  He alleges that he was disabled since
April 8, 2005.  R. at 55, 369.  After Mr. Haddock's claim was denied at the initial level,
R. at 51-54, an Administrative Law Judge ("ALJ") conducted a hearing on May 8, 2007,

at which plaintiff was represented by counsel.  R. at 477-94.  In addition to Mr.

Haddock's testimony, the ALJ received the testimony of a Vocational Expert ("VE") at

this hearing.  On July 25, 2007, the ALJ issued a decision denying plaintiff's application.

R. at 27-40.

Plaintiff requested that the Social Security Administration's Appeals Council

("Appeals Council") review the ALJ decision.  R. at 22-23.  Plaintiff submitted evidence

to the Appeals Council that was not before the ALJ and requested that the Appeals

Council consider it in connection with its review.  R. at 9-10.  The new evidence

consisted of a letter from Mr. Haddock's attorney, a letter from Mr. Haddock's sister,

and additional medical evidence from an infectious disease clinic, an infectious disease

doctor, a psychiatric nurse practitioner, a licensed clinical social worker, and an

oncologist.  R. at 405-76.

On January 17, 2008, the Appeals Council noted that it reviewed the newly

submitted evidence, but denied plaintiff's request for review of the ALJ decision

nonetheless.  R. at 5-10.  Therefore, the ALJ denial stands as the Commissioner's final

decision on this matter.  Plaintiff filed a timely appeal with this Court, making the

Commissioner's final decision reviewable.  *See* 42 U.S.C. § 405(g) (2006); *Bowman v.

Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## III.  ANALYSIS

### A.  Standard of Review

Review of the Commissioner's finding that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standards and whether

the decision is supported by substantial evidence in the record as a whole.  *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

The Court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Flaherty*, 515 F.3d at 1070.  The district court may not reverse an ALJ simply because it may have reached a different result based on the record; the question instead is whether there is substantial evidence showing that the ALJ was justified in her decision.  *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990).

In addition to a reversal for lack of substantial evidence, a district court may reverse the Commissioner's final decision where the ALJ failed to apply the correct legal test.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

A person is disabled within the meaning of the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (2006).  Furthermore,

3

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A) (2006).

The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 416.920. The steps of the process are:

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets an impairment listed in appendix 1 of the relevant regulation; (4) whether the impairment precludes the claimant from doing his past relevant work; and (5) whether the impairment precludes the claimant from doing any work.

*Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) (citing 20 C.F.R. § 404.1520(b)-(f)). A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

The claimant has the initial burden of establishing a case of disability. However, "[i]f the claimant is not considered disabled at step three, but has satisfied her burden of establishing a prima facie case of disability under steps one, two, and four, the burden shifts to the Commissioner to show the claimant has the residual functional capacity (RFC) to perform other work in the national economy in view of her age, education, and work experience." *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). While the claimant has the

initial burden of proving a disability, "the ALJ has a basic duty of inquiry, to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts." *Hill v. Sullivan*, 924 F.2d 972, 974 (10th Cir. 1991).

### B. The ALJ Decision

In her July 25, 2007 decision, the ALJ reached step five in the sequential five-step analysis. At step one, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since April 8, 2005. R. at 29. At step two, the ALJ determined that plaintiff had a single severe impairment: HIV. R. at 29. At step three, the ALJ concluded that Mr. Haddock did not have an impairment or combination of impairments that met or medically equaled the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. R. at 33.

The ALJ then turned to the task of determining plaintiff's RFC. The ALJ found that Mr. Haddock had "the residual functional capacity to perform a full range of work at the light exertional level with the following nonexertional limitations: no public contact; as little contact as possible with co-workers and supervisors." R. at 34.

In the step-four determination, the ALJ found that the plaintiff was not able to perform his past relevant work. R. at 38. At step five, the ALJ cited the VE's testimony in finding that, in light of plaintiff's age, education, work experience, and RFC, there were at least three jobs that the claimant could perform: assembler of small products, office helper, and housekeeper. The ALJ also repeated the conclusion in the VE's report that 5,000, 12,000, and 10,000 of these jobs, respectively, were available in Colorado. Finally, tracking the VE's testimony, the ALJ reduced the number of jobs that would be available to Mr. Haddock based on the interpersonal contact limitation in the

5

RFC; the number of office helper jobs was reduced by 25% to 9,000 and the number of housekeeper jobs was reduced by 25% to 7,500.  R. at 39, 490.

### C.  Plaintiff's Objections to the ALJ's Decision

In his appeal, Mr. Haddock objects to the ALJ's finding of no disability on four grounds: (1) that the ALJ erred – in other words, lacked substantial evidence – when she found that Mr. Haddock did not have the following severe impairments: mental impairments, fibromyalgia, and asthma; (2) that the ALJ erred by failing to give controlling weight to the opinion of Mr. Haddock's treating physician, infectious disease specialist John Koeppe, M.D.; (3) that the ALJ cited factors that either do not relate to credibility or are inconsistent in making her credibility assessment and therefore the ALJ's credibility determination was not supported by substantial evidence; and (4) that the VE's testimony at the ALJ hearing was not consistent with the Dictionary of Occupational Titles ("DOT") and the ALJ erred when she failed to reconcile this discrepancy.  *See* Pl.'s Opening Brief [Docket No. 11] at 6.

### D.  Determination of Severe Impairments at Step Two

Mr. Haddock argues that the ALJ erred at step two of the five-step process by listing HIV as Mr. Haddock's only "severe" impairment.  Mr. Haddock contends that the ALJ should have found that he also had mental impairments, fibromyalgia, and asthma that qualify as "severe impairments."  *See* Pl.'s Opening Br. at 19-25.

At step two, a claimant must show that regardless of his age, education, and RFC, there exists more than the mere presence of a condition or ailment, or combination thereof, that meets the duration requirement of the regulations; however,

he need only make a "de minimis" showing of such.  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997); *see also* 20 C.F.R. § 404.1520(a)(4)(ii).  The Tenth Circuit has described this standard by explaining that "if the medical severity of a claimant's impairments is so slight that the impairments could not interfere with or have a serious impact on the claimant's ability to do basic work activities, irrespective of vocational factors, the impairments do not prevent the claimant from engaging in substantial gainful activity."  *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997).

Under the regulations, a "severe impairment" is an impairment or combination of impairments that significantly limits one's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1521(a); 20 C.F.R. § 416.921(a).  "Basic work activities . . . mean the abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).  According to the regulations, examples of "basic work activities" include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b); 20 C.F.R. § 416.921(b).

Mr. Haddock's mental impairments meet this standard.  Most notably, the ALJ included in her determination of Mr. Haddock's RFC a limitation on his interaction with

co-workers and supervisors.  Although the Commissioner's response brief, *see* Def.'s Resp. Br. [Docket No. 12] at 6 n.3, for some reason omits the portion of the fifth factor of §§ 404.1521(b) and 416.921(b) which identifies responding appropriately to supervision and co-workers as a basic work activity, the ALJ's inclusion of this limitation in the RFC establishes that the mental impairments qualify as serious impairments. Therefore, it was error for the ALJ to omit them at step two.

The ALJ's conclusion that Mr. Haddock's asthma did not qualify as a severe impairment at step two also lacks support in the record.  There are repeated references to the diagnosis, effects of, and treatment of Mr. Haddock's asthma, and no records contradict such a diagnosis.  Therefore, that ailment is not so slight that it could not interfere with or have a serious impact on the claimant's ability to do basic work activities.  *See Hinkle*, 132 F.3d at 1352.

However, a determination of whether an impairment is "severe" at step two is somewhat different than the determination that occurs during the RFC calculation.  Step two in many ways acts as a threshold check against non-meritorious claims of disability. *See Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining that at step two "the claimant must make a threshold showing that his medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities").

That being said, where an ALJ finds that a claimant has one or more severe impairments, yet erroneously fails to list others, that error often will have little independent impact on the ultimate disability determination.  In fact, § 404.1520, which describes the five-step process, does not contemplate a finding of disability at step two.

20 C.F.R.  § 404.1520(a)(4)(ii) ("At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.").

Furthermore, at step four, an ALJ is to consider all of a claimant's impairments and limitations, even those that are not severe.  *See* 20 C.F.R. § 404.1520(e) ("If your impairment(s) does not meet or equal a listed impairment, we will assess and make a finding about your residual functional capacity based on all the relevant medical and other evidence in your case record, as explained in § 404.1545."); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").  Therefore, to the extent that the ALJ failed to consider all evidence of Mr. Haddock's impairments, severe and otherwise, in determining his RFC, that error is better addressed at step four, not at step two.

Finally, regarding Mr. Haddock's alleged fibromyalgia, substantial evidence supports the ALJ's conclusion that it did not represent a severe impairment.  The medical record does not evince an actual diagnosis of fibromyalgia by any medical source.  All that appears in the record is the dictation by medical professionals of Mr. Haddock's belief that he had such an affliction.  In fact, there are several notations in the record which question the source of the diagnosis.  The ALJ did not err when she

found that Mr. Haddock's self-diagnosis of fibromyalgia was not entitled to weight.  *See* R. at 30.

Ultimately, even if the ALJ erred in excluding additional severe impairments, that decision was inconsequential to the disposition of plaintiff's claim and could amount to no more than harmless error.  *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733-34 (10th Cir. 2005) (discussing harmless error analysis).

### E.  Weight Given to Treating Physician, John Koeppe, M.D.

Mr. Haddock argues that the ALJ erred at step three in determining whether he met or equaled a listed impairment and in determining Mr. Haddock's limitations with respect to his RFC.  According to Mr. Haddock, the ALJ should have given controlling weight to the opinions of his treating physician, Dr. Koeppe, in both of these determinations.

"An ALJ should generally give more weight to opinions from claimant's treating sources."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotation marks, alteration marks, and omission marks omitted); *see* 20 C.F.R. § 416.927(d)(2). In fact, the opinions of treating physicians can be entitled to controlling weight.  *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004); 20 C.F.R. § 416.927(d)(2). In determining whether to afford controlling weight to a treating source opinion, the ALJ

> must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is 'no,' then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record.  If the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Langley*, 373 F.3d at 1119 (quoting *Watkins*, 350 F.3d at 1300) (alteration marks

omitted); *see also* 20 C.F.R. § 416.927(d)(2).

Even when not entitled to controlling weight, however, treating medical source

opinions are not completely discounted as a matter of course.  *See Langley*, 373 F.3d

at 1119; Social Security Ruling 96-2p, 1996 WL 374188.  Instead they are still entitled

to deference and the Court must weigh these opinions using all of the factors provided

in 20 C.F.R. §§ 404.1527 and 416.927:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or testing
> performed; (3) the degree to which the physician's opinion is supported by
> relevant evidence; (4) consistency between the opinion and the record as
> a whole; (5) whether or not the physician is a specialist in the area upon
> which an opinion is rendered; and (6) other factors brought to the ALJ's
> attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01; *see* 20 C.F.R. § 416.927(d); Social Security Ruling 96-

2p, 1996 WL 374188.

"After considering the pertinent factors, the ALJ must give good reasons in the

notice of determination or decision for the weight he ultimately assigns the opinion."

*Watkins*, 350 F.3d at 1301 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2))

(internal quotation marks and alteration marks omitted).  Furthermore, "if the ALJ

rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing

so."  *Id.* (internal quotation marks omitted).

### 1.  The ALJ's Step-Three Determination

Plaintiff argues that the ALJ's step three determination erroneously discounted

Dr. Koeppe's opinion by finding that Mr. Haddock did not meet or equal Listing 14.08 in

20 C.F.R. § 404, Subpart P, Appendix 1.  Under Listing 14.08, regarding "Human

immunodeficiency virus (HIV) infection," there must be

documentation as described in 14.00F and one of the following: . . .

C.  Protozoan or helminthic infections . . . .

N.  Repeated (as defined in 14.00D8) manifestations of HIV infection (including those listed in 14.08A-M, but without the requisite findings, e.g., carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08J, or other manifestations, e.g., oral hairy leukoplakia, myositis) resulting in significant, documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and one of the following at the marked level (as defined in 14.00D8)):

   1.  Restriction in activities of daily living; or
   2.  Difficulties in maintaining social functioning; or
   3.  Difficulties in completing tasks in a timely manner due to deficiencies of concentration, persistence, and pace.

Pl.'s Opening Br. at 26 (citing 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 14.08C &

14.08 N).[1]

---

[1] Listing 14.08N was subsequently amended by 73 FR 14570-01 (effective June 16, 2008).  The new listing, now at 14.08K, reads:

Repeated (as defined in 14.00I3) manifestations of HIV infection, including those listed in 14.08A-J, but without the requisite findings for those listings (for example, carcinoma of the cervix not meeting the criteria in 14.08E, diarrhea not meeting the criteria in 14.08I), or other manifestations (for example, oral hairy leukoplakia, myositis, pancreatitis, hepatitis, peripheral neuropathy, glucose intolerance, muscle weakness, cognitive or other mental limitation) resulting in significant, documented symptoms or signs (for example, severe fatigue, fever, malaise, involuntary weight loss, pain, night sweats, nausea, vomiting, headaches, or insomnia) and one of the following at the marked level:

   1.  Limitation of activities of daily living.
   2.  Limitation in maintaining social functioning.
   3.  Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

With respect to the ALJ's step-three determination, the question is not as easy as determining whether the ALJ properly disregarded the opinions of a treating physician.  The first, and somewhat more difficult, issue is determining what Dr. Koeppe's opinions are.  Mr. Haddock alleges that Dr. Koeppe opined that Mr. Haddock met or equaled the Social Security listing for HIV at step three.  *See* Pl.'s Opening Br. at 26.  Plaintiff cites to a report from Dr. Koeppe at page 275 of the Record and argues that "[i]f the ALJ had given it the weight to which it was entitled, i.e., controlling weight, then this treating physician's opinion would have required finding that Mr. Haddock's impairment met this listing [under paragraph N]."

In the portion of Dr. Koeppe's report relied upon by the plaintiff, Dr. Koeppe indicated that Mr. Haddock then or in the past had "<u>repeated manifestations of HIV infection</u> resulting in significant, documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and marked restriction in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in completing tasks in a timely manner due to deficiencies of concentration, persistence, and pace."  R. at 275 (underlining added by Dr. Koeppe in original).  However, Dr. Koeppe also added an annotation to this determination in which he stated that Mr. Haddock "has these symptoms but unclear if related to HIV or other underlying conditions."  R. at 275.

The listing for HIV at 14.08(N) clearly states that the HIV infection must *result* in the symptoms and limitations.  Contrary to plaintiff's contention, Dr. Koeppe made no such opinion.  Mr. Haddock cites no other evidence to support his position that the

ALJ's step-three conclusion regarding 14.08N is overwhelmed by contrary evidence, nor do I find that to be the case.

Plaintiff also argues that, based on Dr. Koeppe's report, the ALJ should have found that Mr. Haddock equaled Listing 14.08C regarding a protozoan or helminthic infection. The listing indicates that it encompasses: "cryptosporidiosis, isosporiasis, or microsporidiosis, with diarrhea lasting for 1 month or longer." Plaintiff argues that his diarrhea, which Dr. Koeppe noted as lasting over 1 month but being of indeterminate cause, while not meeting 14.08C, equaled that listing. Plaintiff argues that the ALJ erred both by not giving Dr. Koeppe's opinion controlling weight and by not calling a separate, independent medical expert to opine on the issue.

First, Dr. Koeppe does not opine that plaintiff had a protozoan or helminthic infection including cryptosporidiosis, isosporiasis, or microsporidiosis, with diarrhea lasting for 1 month or longer, or anything equivalent at the location plaintiff identifies – page 273 of the Record – or anywhere else that the Court can identify. At the page cited, he merely states that the cause is unknown. In that same report, Dr. Koeppe noted that Mr. Haddock did not have such an infection during the time he was seen at the clinic and that he "should not have been at risk for these." R. at 271.

Furthermore, the Record demonstrates other potential sources of the diarrhea, none having to do with an infection. *See* R. at 317 (suggesting eating patterns could produce the diarrhea plaintiff experienced); R. at 341 (indicating that plaintiff likely had irritable bowel syndrome).

Plaintiff's reliance on Social Security Ruling 96-6p is unavailing as well. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *3 ("[L]ongstanding policy requires

that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight.").  This section of Ruling 96-6p begins by stating that "[t]he administrative law judge or Appeals Council is responsible for deciding the ultimate legal question whether a listing is met or equaled."  Social Security Ruling 96-6p, 1996 WL 374180, at *3.  Furthermore, the Ruling allows the requirement regarding receiving evidence to be met by "various other documents on which medical and psychological consultants may record their findings."  The ALJ accepted into the record Dr. Koeppe's report which discussed protozoan or helminthic infections and included Dr. Koeppe's observations that such infections were unlikely.  Ruling 96-6p requires additional, updated expert testimony in limited circumstances, none of which exists in this case. *See* Social Security Ruling 96-6p, 1996 WL 374180, at *4.

### 2.  The ALJ's RFC Determination

Mr. Haddock also argues that the ALJ improperly failed to give controlling weight to Dr. Koeppe's opinion regarding Mr. Haddock's RFC.  As noted above, an ALJ need only give controlling weight to a treating physician where "the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."  *Langley*, 373 F.3d at 1119.  On February 5, 2007, Dr. Koeppe completed an RFC form for plaintiff in which he opined as to Mr. Haddock's ability to perform various work-related activities. At the various points in the form where Dr. Koeppe was to list the medical findings that supported his conclusions, he offered none.  In several cases, he instead noted that the

conclusions were based on Mr. Haddock's subjective reports,  *see* R. at 265, 266, 267, and he once stated that he "would refer to mental health eval." R. at 269.

Dr. Koeppe was plaintiff's infectious disease doctor.  On a previous occasion, Dr. Koeppe explained that Mr. Haddock's infectious disease, HIV, was well controlled and did not appear to impact plaintiff's ability to work.  R. at 356.  With regard to Mr. Haddock's other reported limitations, not only does the record lack evidence of "medically acceptable clinical and laboratory diagnostic techniques" that Dr. Koeppe used in arriving at his conclusions, the doctor himself noted that he was not particularly qualified to make such assessments in plaintiff's case.  R. at 356-357.  When asked by Mr. Haddock to fill out disability forms, Doctor Koeppe noted that it was "unclear to me since I have not known him longitudinally the extent of this disability." R. at 356.  Dr. Koeppe's notation further indicates that his conclusions regarding plaintiff's limitations were based on subjective reports.  For example, Dr. Koeppe wrote that plaintiff  "does *speak* of significant limitations in his daily activities," that it was "unclear to me how much of [his seeking disability] is his own desire and how much of it is other providers telling him to get disability or not get disability and how much of it is his own belief system that he can no longer work," and that "[n]onetheless, he does *seem* to have significant limitations in his ability to function." R. at 356-57 (emphasis added).

The ALJ noted some of these responses in the portion of her opinion discussing Dr. Koeppe's RFC opinion. *See* R. at 38.  The ALJ cited Dr. Koeppe's reliance on Mr. Haddock's subjective reports, together with the ALJ's conclusion that Mr. Haddock's subjective reports were not credible, as the reasons the ALJ gave little weight to Dr. Koeppe's assessment.  R. at 38.  Because Dr. Koeppe's opinions were, according to

16

the doctor himself, based on subjective statements of the patient and were not

"well-supported by medically acceptable clinical and laboratory diagnostic techniques,"

*Langley*, 373 F.3d at 1119, the ALJ did not err by declining to give these opinions

controlling weight.

### F.  The ALJ's Credibility Determination

Mr. Haddock argues that the ALJ's credibility determination regarding the

intensity, persistence, and functionally limiting effects of his pain and other symptoms

was flawed.  According to Mr. Haddock, the factors the ALJ cited were either

inconsistent with the credibility finding or the conclusions reached were not based in

substantial evidence.

In her decision denying Mr. Haddock's disability claims, the ALJ found that Mr.

Haddock's reports of the extent and effect of his symptoms were not credible.  The ALJ

correctly cited the Social Security Ruling and regulations which provide guidance in

making this evaluation.  *See* R. at 35-36 (citing Social Security Ruling 96-7p, 1996 WL

374186; 20 C.F.R. § 404.1529(c); 20 C.F.R. § 416.929(c)).  The ALJ then described a

number of Mr. Haddock's statements that she determined to be inconsistent with or

implausible in light of his alleged symptoms.

Mr. Haddock disagrees with several of the ALJ's statements regarding credibility.

First, Mr. Haddock contests the ALJ's interpretation of the fact that Mr. Haddock

reported having various illnesses and limitations and yet continued to work.  According

to Mr. Haddock, the ALJ should have viewed this evidence as indicative of his

willingness to work despite his limitations, thus enhancing his credibility.  The ALJ

instead appears to have taken these reports either as evidence of Mr. Haddock's

overstating the impacts of his current limitations on his ability to work or as evidence of his exaggeration of the impairments themselves.

Mr. Haddock also takes issue with the ALJ's citation to reports of Mr. Haddock's failure to comply with medical advice and otherwise follow through with available treatments.  The ALJ appears to view these examples – such as Mr. Haddock's continued smoking of tobacco and marijuana, his failure to modify his diet, his failure to take his medication as prescribed, and his failure to seek alternative treatment – as evidencing a lack of credibility regarding the intensity, persistence, and functionally limiting effects of Mr. Haddock's pain and other symptoms.

Credibility determinations are peculiarly the province of the finder of fact and courts will not upset such determinations when supported by substantial evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler*, 68 F.3d at 391 (internal quotation marks and alteration marks omitted).

Here, Mr. Haddock would like the Court to adopt his interpretation of the record over the interpretation of the ALJ.  In truth, I find both interpretations to be plausible. However, because the ALJ's conclusion is supported by substantial evidence, I cannot overrule it on appeal.  To do otherwise would impermissibly reweigh the evidence in this case. *See Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).  Therefore, the ALJ's credibility determination must stand.

## G.  Reconciling the VE's Testimony with the DOT

At step five, the ALJ concluded that, in light of plaintiff's age, education, work experience, and RFC, there were jobs in significant numbers in the national economy that Mr. Haddock could perform.  The ALJ arrived at this conclusion based on the testimony of the VE at the May 8, 2007 hearing.  The VE testified that Mr. Haddock could work as an assembler of small products, as office help, and as a housekeeper and that 5,000, 12,000, and 10,000 such jobs, respectively, existed in Colorado.  R. at 490.  The VE also noted that the limitation on interpersonal contact – which the ALJ later adopted as part of Mr. Haddock's RFC – caused an erosion of 25% in the number of the latter two positions.  R. at 490.  In her step-five discussion, the ALJ noted the erosion based on "nonexertional limitations" and reduced the number of available jobs accordingly.  R. at 39.  The ALJ then noted that "[p]ursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles."  R. at 39.

Mr. Haddock contends that the ALJ committed reversible error at step five by not properly reconciling the description of the jobs offered by the VE with the Dictionary of Occupational Titles.  According to Mr. Haddock, the limitation on public contact in his RFC is in "direct conflict" with the description in the Dictionary and thus requires some additional reconciliation beyond the reductions offered by the VE.  I disagree.

The VE testified at the hearing that he based his calculations on the knowledge he acquired "by helping individuals return to work with disabilities over the past 20 years, and my own professional experience in doing that and dealing with employers." R. at 491.  Mr. Haddock does not offer conflicting evidence beyond his own conjecture

19

based on the job descriptions.  Because the ALJ's conclusion about the number of available jobs is supported by substantial evidence in the form of the VE testimony, I find that no reversible error was made at step five.

### H.  The New Evidence

As mentioned earlier, plaintiff requested that the Appeals Council consider in its review of the ALJ's decision evidence that was not before the ALJ.  The extent to which a district court is to consider such evidence is described in *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).  "[T]he Appeals Council must consider evidence submitted with a request for review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision."  *Chambers*, 389 F.3d at 1142 (internal quotation marks and alteration marks omitted).

"Whether evidence qualifies as new, material and chronologically relevant is a question of law subject to . . . de novo review."  *Chambers*, 389 F.3d at 1142 (internal alteration marks omitted).  "Evidence is new within the meaning of [20 C.F.R. § 404.970(b) and 416.1470(b)] if it is not duplicative or cumulative."  *Lawson v. Chater*, 83 F.3d 432, 1996 WL 195124 at *2 (10th Cir. Apr. 23, 1996) (unpublished table opinion) (citing *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991)).  "Evidence is material to the determination of disability if there is a reasonable possibility that [it] would have changed the outcome."  *Lawson*, 1996 WL 195124 at *2 (unpublished table opinion) (citing *Wilkins*, 953 F.2d at 96).  Evidence is "chronologically relevant" if it "relates to the period on or before the date of the decision."  *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

If the evidence does not meet the tripartite rule stated in *Chambers*, "it plays no further role in judicial review of the Commissioner's decision."[2]  *Chambers*, 389 F.3d at 1142 (citing *Wilson v. Apfel*, 215 F.3d 1338, 2000 WL 719457, at *2 (10th Cir. 2000) (unpublished table opinion); *Tollett v. Barnhart*, 60 F. App'x 263, 265, 2003 WL 1473565, at *1 (10th Cir. 2003) (refusing to consider records that were not chronologically relevant regardless of whether Appeals Council considered them)).

If the evidence meets the tripartite rule and was considered by the Appeals Council, it becomes part of the record that the Court uses in evaluating whether substantial evidence supports the ALJ's conclusion.  *Chambers*, 389 F.3d at 1142; *see also O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).  In the present case, the evidence first submitted to the Appeals Council was, for the most part, "new."  It was previously unavailable and does not appear to be merely duplicative or cumulative.

Much of the evidence submitted to the Appeals Council, however, is not chronologically relevant.  The evidence appears to record Mr. Haddock's continuing treatment by his doctors following the ALJ's decision on July 25, 2007.  Only those records that predate the ALJ's decision, *see*, *e.g.*, R. at 438-465, 467, are chronologically relevant and thus potentially reviewable on appeal.

---

[2] There is at least one published Tenth Circuit case that suggests that where, as occurred here, *see* R. at 5-6, the Appeals Council considered the newly proffered evidence without making specific findings under the tripartite rule, a court must deem the evidence to be new, material, and chronologically relevant.  *See Martinez v. Barnhart*, 444 F.3d 1201, 1208 (10th Cir. 2006).  *Martinez* appears to contradict *Chambers* and could result in the inconsistent finding that evidence which does not present the reasonable possibility of changing the outcome of the case is deemed to be "material" nonetheless.  Therefore, the Court assumes *Martinez* to be confined to the facts of that case and not to require a finding of materiality in this case.

The remaining evidence is not "material," and therefore, by its very nature as such, does not alter the outcome. Instead, the new evidence appears to be more of the same sort which the ALJ examined. To the extent that it indicates that plaintiff had medical ailments, it also showed that those ailments are manageable and do not preclude work. For example, Mr. Haddock argues that the new evidence proves that he has a more severe case of Kaposi's sarcoma than previously thought. However, the evidence does not bear this out. For example, on February 5, 2007, Dr. Koeppe, the infectious disease specialist, stated regarding Mr. Haddock's Kaposi's Syndrome that "he really does not have any systemic manifestations at this time." R. at 449. Again on May 14, 2007, Dr. Koeppe reported: "History of Kaposi's based on lymph node biopsy but currently has no evidence of active disease elsewhere." R. at 440. Dr. Madeleine Kane, an oncologist, also stated in February that "[m]y impression is that the patient has no clinical or objective evidence of Kaposi's sarcoma." R. 446.

Furthermore, although following Mr. Haddock's May 2007 visit Dr. Koeppe opined that it seemed Mr. Haddock's "prospects for gainful employment are low," R. at 441, during the February visit he reported that "I have told [Mr. Haddock] that I think from a physical standpoint he is not necessarily disabled as there are people with greater physical disabilities who do work, however, it may be that his mental illness is preventing him from working." R. at 451.

There is not a reasonable possibility that this evidence would change the outcome of the ALJ's decision. The ALJ did not deny the existence of plaintiff's HIV or Kaposi's sarcoma. Rather, she questioned the severity and impact on Mr. Haddock's

ability to work.  The new evidence supports rather than undermines the conclusion that Mr. Haddock's HIV and sarcoma do not preclude his working.

Plaintiff also asserts that the new evidence better establishes the existence of his fibromyalgia.  However, the new evidence evinces the same pattern as before.  Mr. Haddock reported his belief that he has fibromyalgia.  The medical professionals sometimes noted it in their reports.  *See*, *e.g.*, R. at 440, 449.  However, at no point has a medical professional diagnosed Mr. Haddock with fibromyalgia.

Because there is evidence that Mr. Haddock continues to smoke, any new evidence regarding Mr. Haddock's asthma does not impact the analysis either.  *See*, *e.g.*, R. at 440, 449.  To the extent that the ALJ did not find credible Mr. Haddock's claims about the severity of his asthma due to his continued smoking, the new evidence is not reasonably likely to change that conclusion.  Finally, the newly submitted evidence regarding Mr. Haddock's mental health does not tip the balance on the issue of disability either and therefore does not qualify as "material."  The evidence shows that Mr. Haddock's mental health fluctuates, apparently in accord with his adherence to his medication regimen.  *See* R. at 467.

Therefore, even though the Appeals Council noted that, in determining whether to review the ALJ decision, it considered the new evidence, I find as a matter of law that it is not "material" and, in any event, would not alter the outcome of the case.

### III.  CONCLUSION

Therefore, upon review of the arguments raised by plaintiff on his appeal and of the record as a whole, I find that plaintiff's objections do not warrant a reversal or remand in this case.  Accordingly, it is

**ORDERED** that the Commissioner's final decision in the form of the ALJ's July 25, 2007 decision is AFFIRMED.   It is further

**ORDERED** that the Clerk shall forthwith enter judgment in favor of defendant Commissioner and against plaintiff Steven Haddock.

DATED September 29, 2009.

BY THE COURT:

s/ Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge